## Commonwealth v. Ripka

*Maurice Mordell*, for petitioner.

GORDON, JR., P. J., February 9, 1940.—In considering this petition for parole, it is important to determine not only the length of time petitioner has been imprisoned under the sentence upon which the parole is sought, but

also the period which, under the law, he will be required to serve if he is not again released until the expiration of his maximum sentence. We accordingly asked the authorities of the county prison for information upon this subject, as a result of which we have learned that they have been computing the running of sentences in such circumstances in a manner which, in our opinion, is not authorized by law. We, therefore, held an additional hearing in the case, at which the acting superintendent of the prison appeared at our request, and stated that it is the regular practice of his institution, in computing the running of sentences of prisoners committed for violation of parole, to give them credit for the time during which they were at liberty under parole, and to release them on the date on which they would have been released if no parole had been granted and they had been compelled to serve the entire maximum sentence originally imposed. Thus, in the present case, the prisoner was sentenced by us to a term of not less than one, nor more than five years, to date from September 28, 1936. The maximum sentence, therefore, would have expired, and he would have been released, had he not been paroled, on September 28, 1941. He was paroled, however, at the expiration of his minimum sentence, or on September 28, 1937, and was at liberty until arrested for robbery and assault and battery, of which he was convicted and sentenced by our brother Heiligman on March 19, 1938, to not less than one, nor more than four years. On the same date, we revoked his parole and recommitted him to the county prison to serve the balance of the sentence imposed by us. In this situation, the superintendent of the county prison advises us that, unless otherwise directed, and assuming petitioner will be paroled at the expiration of the minimum sentence imposed by Judge Heiligman, the prison authorities will give credit to petitioner for the year he was at liberty under our parole, and will release him on September 28, 1942. On the other hand, if no such credit is given, he will not be entitled to release until Sep-

tember 28, 1943, or five years from the beginning of his service of the latter sentence. It is important, therefore, not only to the present case, but also to the future administration of the law at the county prison, that the correct manner of computing the running of sentences in such cases shall be determined and uniformly followed by the prison authorities.

So far as sentences to the penitentiary are concerned, this question is settled by express legislative enactment, and the decisions of both the Supreme and Superior Courts thereunder. Section 10 of the Act of June 19, 1911, P. L. 1055, as amended by section 1 of the Act of June 3, 1915, P. L. 788, and section 1 of the Act of June 22, 1931, P. L. 862, which deals with parole of prisoners sentenced to a penitentiary, provides that a parolee, on conviction of crime during his parole period, shall "in addition to the penalty imposed for such crime committed during the said period . . . be compelled . . . to serve . . . the remainder of the term (without commutation) which [he] . . . would have been compelled to serve but for the commutation authorizing" his parole. This language was first interpreted in the case of Commonwealth ex rel. v. Smith, Warden, 118 Pa. Superior Ct. 250, 255, in an opinion by Judge Baldrige in which, after reviewing the authorities in other States, it was definitely held that a prisoner whose parole is revoked for the commission of another crime must serve "the remainder of the time not served, without diminishing his imprisonment by substituting therefor time on parole." "In construing this statute," said the learned judge who wrote that opinion, "we must consider all the language used. The words 'without commutation' must be given a meaning that can not be omitted or glossed over. Evidently they are for a definite purpose. We think there is no ambiguity in their meaning, nor can there be a serious question that the intent of the Legislature in using them was that the sentence should not be resumed by giving credit for time on parole

because a convict was given an opportunity to be at liberty and to live in obedience to the laws."

This interpretation of the Act of 1911, supra, was affirmed by the Supreme Court in the case of Commonwealth ex rel. v. Smith, Warden, 323 Pa. 89. In it, Mr. Justice Maxey, quoting at length from Judge Baldrige's opinion, said, in referring to it:

"In that case Judge Baldrige . . . interpreted section 10 of the Act of June 19, 1911, P. L. 1055, as amended by the Act of June 22, 1931, P. L. 862, as meaning that where the parole of a prisoner sentenced to a state penitentiary has been revoked for the commission of another crime, he may be imprisoned for another period equaling the remainder of the maximum sentence not served when the parole was granted, without allowance of credit for the time he was out on parole and not delinquent."

These cases settle the law of Pennsylvania on this subject so far as it applies to sentences to the penitentiary, and we think that in this respect there is no difference between sentences to the penitentiary on the one hand, and to the county prison on the other. It is true that paroles from State penitentiaries and county institutions are regulated by different acts, the latter being governed by the Act of June 19, 1911, P. L. 1059, and that they do not contain the same provisions. They were passed at the same session of the legislature, however, and were approved by the Governor on the same day, and together constitute our system of parole legislation. By them parole was introduced as a part of our system of penology. The first of these acts, which regulates paroles from penitentiaries, is rather elaborate in its provisions. The second lays down no rules whatever for the regulation of paroles from the county prison. It is but one paragraph in length, and, except as subsequently amended by the Act of May 11, 1923, P. L. 204, to prescribe regulations for the hearing of petitions for parole, it merely confers upon the quarter sessions courts the power "after due hearing, to release on parole any convict confined in the

county jail, house of correction, or workhouse" of its district, and "to recommit to jail, workhouse, or house of correction on cause shown by such probation officer that such convict has violated his or her parole, and to reparole in the same manner and by the same procedure as in the case of the original parole if, in the judgment of said court, there is a reasonable probability that the convict will be benefited by again according liberty to such convict, and also to again recommit for violation of such parole."

There are no provisions here, such as in the act relating to penitentiaries, prescribing what shall be done upon a violation of parole by a parolee, except that he may be recommitted and reparoled in the discretion of the court. We think, therefore, that the only reasonable conclusion to be reached from this complete absence of express legislative declaration upon the subject in the second act is that the legislature considered that, by the previous act relating to the penitentiary, it had given to the word "parole" a connotation sufficiently fixed and definite, at least as to basic principles, to render its further definition unnecessary when used in subsequent legislative enactments. In this respect we think that the acts should be interpreted similarly in order that the administration of parole may be uniform, and shall differ only in those particulars in which a legislative intent to distinguish between paroles from penitentiaries and from local county institutions is apparent or reasonably and necessarily to be inferred.

This being so, we find no statutory authority for holding the general consequences of a parole violation to be different in the case of prisoners sentenced to the county prison from those prescribed for penitentiary prisoners, except that, in the former case the power is given to the courts to reparole after commitment for violation of parole, whereas this power has not been conferred upon the Board of Pardons, the paroling authority in the case of penitentiary prisoners.

Apart from the indication of the legislative conception of parole just discussed, the rule prescribed by the act for violations of parole from penitentiaries is in accord with the generally-accepted basic conceptions of parole as a reformative measure. As pointed out by Mr. Justice Maxey in Commonwealth ex rel. v. Smith, Warden, supra, p. 92:

"Relator contends that a paroled convict is to such an extent deprived of his freedom that he should be considered in the eyes of the law as 'serving his time.' The answer to that argument is that no individual's freedom is absolute and that while a paroled convict is to some extent restricted in his freedom, his life as a paroled convict is, as to his former life within the prison walls, one of comparative freedom. Furthermore, it is clear that when a convict is at liberty on parole, the restraints placed upon him by the Commonwealth are not punitive but reformative in character. Rules circumscribing to a degree his activities are imposed upon the parolee to help him form those habits of good conduct which will qualify him as a law-abiding member of society."

The theory of parole is based upon the benefit to be derived by society and the prisoner from remitting the immediate service of the balance of his sentence on the condition that, during his parole period, he does not again violate the law. He is still subject to the sentence, but the obligation to serve the balance of it is merely suspended to rearise upon his misbehavior; and the value of the parole as a steadying and reformative measure would be progressively weakened, if the parolee's liability to pay the forfeit implied in the condition were permitted to be diminished by mere lapse of time. That the legislature could authorize such a method of computing sentences, as has been done in other States, may be conceded. It has not yet done so here, however, and, until it does, the prison authorities have no power to give credit for the assumed good behavior of a parolee during his period of conditional liberty.

Whether the distinction made in the Act of 1911 relating to penitentiaries between commitments for violations of parole involving convictions of crime and those involving mere violations of the rules of the Parole Board, in the latter of which cases it has been held that under section 14 of the act credit should be given for the period during which the parolee was at liberty (Commonwealth ex rel. v. Smith, Warden, 118 Pa. Superior Ct. 250, 255), is applicable to the county prisons is not now before us. We think, however, that it does not apply to paroles from county institutions, for reasons which need not be reviewed in detail at this time. It is sufficient to point out that, since, under the act relating to county prisons, the courts are given the power to reparole at any time, releases in proper cases can be secured in that manner and all the prisoner's rights secured to him. The county prison authorities do not know in every instance the particular violation for which a recommitment is made, as is the case under the system in operation in penitentiaries, and hence are not able themselves to determine the question. The better practice therefore is for them to give no credit for the period spent by the parolee while at liberty, unless the court in its commitment so directs.

We, therefore, hold that it is the duty of the authorities of the county prison, in computing the period to be served by petitioner, and by all prisoners similarly situated, to disregard the period during which he or they may have been at liberty on parole, and to retain custody of the prisoner for the entire balance of the sentence remaining unserved at the time the parole was granted.

We have carefully considered the reasons urged upon us by petitioner for granting a reparole at this time, and are not satisfied either that the interests of the Commonwealth or the best interests of the prisoner justify our granting the petition. The petition is, therefore, dismissed without prejudice.